UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.

Case # 17-CR-6032-FPG-JWF

DECISION AND ORDER

JOSEPH W. PEEPLES, III,

       Defendant.

# INTRODUCTION

On January 6, 2017, the United States of America filed a Criminal Complaint alleging that Defendant Joseph W. Peeples, III, robbed a bank in violation of 18 U.S.C. § 2113(a). ECF No. 1. On February 23, 2017, the Grand Jury returned an Indictment charging Peeples with one count of bank robbery, one count of entering a bank with intent to commit larceny, and one count of bank larceny in violation of 18 U.S.C. §§ 2113(a), (b). ECF No. 7. The next day, the case was referred to Magistrate Judge Jonathan W. Feldman for pre-trial matters and dispositive motions. ECF No. 8.

At his arraignment, Peeples moved to proceed *pro se* and Judge Feldman granted the motion. ECF No. 10.

On March 30, 2017, Peeples moved to suppress evidence obtained from his hotel room after his warrantless arrest and statements after his arrest, and he moved to dismiss the criminal complaint and the arrest warrant based on a number of alleged violations of the Federal Rules of Criminal Procedure. ECF Nos. 14, 48. Judge Feldman then held a suppression hearing and issued a report and recommendation ("R&R"), ECF No. 48, to which Peeples objected. ECF No. 51. The

1

Government responded to Peeples's objections. ECF No. 55. For the reasons that follow, the Court adopts Judge Feldman's R&R and Peeples's motions are DENIED.

## BACKGROUND

On January 5, 2017, at approximately 8:25 a.m., a male suspect robbed the Chase Bank located at 1 South Clinton Avenue in Rochester, New York. ECF No. 1, ¶ 3. The suspect entered the bank, robbed it, and left with approximately $109,500. *Id.*, ¶ 4. Video surveillance from outside the Bank showed the suspect fleeing north on Stone Street by foot toward East Main Street. *See id.*, ¶ 5. He then entered a taxi in front of the Hyatt Hotel. *Id.* No other individuals appear on the video surveillance during the time the bank was robbed. *Id.*

The taxi driver dropped off the suspect at the Trailways Bus Station. *Id.* The suspect left sunglasses and a jacket with bundles of cash totaling approximately $9,990 inside the taxi. *Id.* Video surveillance from the bus station showed the taxi dropping off the suspect, who then entered the bus station with a bag. *Id.*, ¶ 6. The suspect entered a bathroom in the bus station and exited in different clothes several minutes later. *Id.* Police later found $43,500 in the trash can inside the bathroom. *Id.*

After exiting the bus station bathroom, the suspect took another taxi to the Quality Inn at 1273 Chili Avenue in Rochester. *Id.*, ¶ 7. Video surveillance from inside the Quality Inn showed the suspect entering the hotel in the same clothes he had on when he left the bus station. *Id.*, ¶ 9. The manager of the Quality Inn said that the suspect provided his name, Joseph W. Peeples, III, and his address and driver's license number when he rented a room. *Id.* The taxi driver reviewed the surveillance video from the Quality Inn and confirmed that Peeples was the individual he transported in his taxi. *Id.*, ¶ 8.

The taxi driver picked him up an hour later and drove him back to the bus station at approximately 10:05 a.m. *Id.*, ¶ 7. Peeples entered the bus station again at 10:14 a.m. and purchased a bus ticket to New York City. *Id.*, ¶ 8. The bus left Rochester at 10:55 a.m. and made several stops. *Id.*, ¶ 10. Peeples exited the bus in Binghamton, New York, and hailed a taxi. *Id.* The taxi driver took Peeples to four or five different hotels, none of which would accept cash without a credit card. *See id.* Eventually, the driver dropped Peeples off at the Grand Royale Hotel in Binghamton. *Id.*

The same day, FBI Special Agent John Bokal, Jr., learned of the robbery and Peeples's travels. ECF No. 33, at 13-14.[1] Based on this information, Agent Bokal believed he had probable cause to locate and arrest him. *Id.*

Through an investigator with the Binghamton Police Department, Agent Bokal discovered that Peeples's last known location was the Grand Royale Hotel in Binghamton. *Id.* at 15. Agent Bokal went to the Grand Royale Hotel the same day. *Id.* at 16. He entered the main entrance of the hotel, which included a set of unlocked doors leading to a set of locked doors. *Id.* After reviewing signs to the side of the locked doors, Agent Bokal contacted the hotel manager, Salim Khan, and identified himself. *Id.* Khan then appeared and let Agent Bokal into the hotel. *Id.* at 19-20.

Agent Bokal showed Khan a picture of Peeples, and Khan confirmed that a taxi had dropped Peeples off at the hotel earlier that afternoon. *Id.* at 20. Khan then retrieved a copy of the bill with Peeples's name and a copy of his identification. *Id.*

Agent Bokal then asked Khan if Peeples was currently inside the hotel. *Id.* Khan responded that Peeples had left the hotel and Khan assumed Peeples was still gone. *Id.* at 20-21. Agent Bokal

---

[1] Agent Bokal testified at an evidentiary hearing regarding Peeples' motion to suppress. ECF No. 33.

3

then requested that Khan show Agent Bokal to Peeples's room. *Id.* at 21. Khan led Agent Bokal and three members of the Binghamton Police Department to a set of stairs leading to the third floor of the hotel. *Id.* at 21-22. As they were making their way up the staircase to the third floor, Khan pointed to an individual on a landing on the stairway and said, "that's him." *Id.* at 22. Peeples was sitting on the stairs with a cellphone when Agent Bokal approached and arrested him. *Id.* at 22-23. Agent Bokal did not pass through any locked doors once he entered the hotel. *Id.*

Law enforcement interviewed Peeples after his arrest. The following day, January 6, 2017, they transported Peeples to Rochester, New York for his initial appearance. Before the initial appearance, FBI Special Agent Seth Fleitman obtained a criminal complaint and arrest warrant. *See* ECF Nos. 1, 4. The arrest warrant was returned at 3:29 p.m. on January 6. According to the audio recording, Peeples's initial appearance began before Judge Feldman at 3:50 p.m. on January 6, and Judge Feldman appointed a federal public defender to represent Peeples.

## LEGAL STANDARD

A district court reviews those portions of an R&R to which a party has timely objected *de novo*. Fed. R. Crim. P. 59(b)(3). When a party does not object to a portion of an R&R, or when the objections are conclusory, general, or without legal support, a district court reviews those portions for clear error. *See United States v. Preston*, 635 F. Supp. 2d 267, 269 (W.D.N.Y. 2009) (citing *Cullen v. United States*, 194 F.3d 401, 405-07 (2d Cir. 1999)); *see also* Fed. R. Crim. P. 59(b)(2); Loc. R. Crim. P. 59(c)(2) ("Written objections . . . shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority.").

After reviewing the R&R and the objections thereto, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." Fed. R. Crim. P. 59(b)(3).

## DISCUSSION

I.   **Motion to Suppress Evidence Obtained from Peeples's Hotel Room after his Warrantless Arrest**

Judge Feldman recommends that the Court deny Peeples's motion to suppress evidence obtained from his hotel room after his warrantless arrest because law enforcement had probable cause to arrest Peeples and he was arrested in a public place. ECF No. 48 at 9-17. Peeples objects, first contending that "there was no evidence Agent Bokal [had] probable cause factually" when he arrested Peeples, and next that Agent Bokal violated the Fourth Amendment when he bullied his way into a locked hotel under no exigent circumstances. ECF No. 51 at 2-3.

Police do not violate the constitution when they arrest someone without a warrant in a public place based on probable cause. *United States v. Long Huang Yo*, 198 F. Supp. 2d 393, 404 n.17 (S.D.N.Y. 2002) (citing *United States v. Watson*, 423 U.S. 411, 417-24 (1976)).

Probable cause to arrest exists if law enforcement officers "have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient in themselves to warrant a person of reasonable caution in the belief that (1) an offense has been or is being committed (2) by the person to be arrested." *United States v. Miller*, 285 F. App'x 5, 8 (2d Cir. 2008) (quoting *United States v. Fisher*, 702 F.2d 372, 375 (2d Cir. 1983)). The evidence required to establish probable cause need not establish guilt beyond a reasonable doubt, but must be "more than rumor, suspicion, or even a strong reason to suspect." *Fisher*, 702 F.2d at 375 (quoting *Henry v. United States*, 361 U.S. 98, 102 (1959)) (quotation marks omitted). In addition, "where law enforcement authorities are cooperating in an investigation, . . . the knowledge of one is presumed shared by

5

all." *Savino v. City of New York*, 331 F.3d 63, 74 (2d Cir. 2003) (quoting *Illinois v. Andreas*, 463 U.S. 765, 772 n.5 (1983)). A court must examine the "totality of the circumstances" and remain cognizant that "probable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 233 (1983).

Whether an arrest was made in a public place is based on the defendant's expectation of privacy in that place. *See United States v. Gori*, 230 F.3d 44, 51-54 (2d Cir. 2000) (Sotomayor, J.) (citing *United States v. Santana*, 427 U.S. 38, 42 (1976)). Individuals in common areas of hotels guarded by locked doors have no legitimate expectation of privacy. *See United States v. Shaw*, 269 F. Supp. 2d 90, 91-92 (E.D.N.Y. 2003) (citing *United States v. Barrios–Moriera*, 872 F.2d 12, 15 (2d Cir. 1989)); *see also United States v. Mankani*, 738 F.2d 538, 544 (2d Cir. 1984) (explaining that hotels' transitory nature "diminishes a person's justifiable expectation of privacy in them").

Here, Agent Bokal arrested Peeples in a public place based on probable cause. First, based on the totality of the circumstances, Agent Bokal had probable cause to arrest Peeples for the bank robbery. One of the taxi drivers, the manager of the Quality Inn, and Khan all identified Peeples based on video surveillance and meeting him in person. The taxi driver transported Peeples from the bus station to the Quality Inn, confirming that Peeples was the individual who changed clothes at the bus station. Peeples also provided his identification to the manager of the Quality Inn and to Khan. Peeples was visible on video at the bus station and the Quality Inn. Peeples also left large quantities of cash in the bus station and in one of the taxis. This information, verified by law enforcement through their investigation, constitutes an unbroken chain of events from the bank

robbery to Peeples's arrest. The Court finds these circumstances establish the probable cause required for Agent Bokal to arrest Peeples.

Second, Agent Bokal arrested Peeples in a public place. Peeples had no legitimate expectation of privacy while seated in a stairway at the Grand Royale Hotel. Khan allowed Agent Bokal into the hotel and led him to Peeples's location. At the time of his arrest, Peeples was in a common area of a hotel, which affords him no legitimate expectation of privacy.

Accordingly, because Peeples's arrest was in a public place and supported by probable cause, the Court adopts Judge Feldman's recommendation, and Peeples's motion to suppress evidence obtained from his hotel room after his warrantless arrest is DENIED.

## II. Motion to Suppress Statements Made by Peeples's after his Arrest

Judge Feldman recommends that the Court deny as moot Peeples's motion to suppress statements he made to law enforcement after his arrest because the Government will not use the statements in its case. ECF No. 48 at 17. Peeples objects, contending that the statements were obtained illegally and formed the basis of the criminal complaint and the arrest warrant. ECF No. 51 at 5-7.

By not using Peeples's post-arrest statements in its case, the Government is giving Peeples the relief he seeks: suppression of the statements. Accordingly, the Court adopts Judge Feldman's recommendation, and Peeples's motion to suppress his post-arrest statements is DENIED AS MOOT.

## III. Alleged Violations of the Federal Rules of Criminal Procedure

In his motion to suppress, Peeples alleges several violations of the Federal Rules of Criminal Procedure. ECF No. 14. In particular, he alleges violations of Rules 3, 4, and 5. See ECF No. 51 at 14. The Court addresses each below.

### a. Initial Appearance

Peeples first alleges a violation of Rule 5.[2] Judge Feldman recommends that the Court deny Peeples's motion to suppress under Rule 5 because there was no violation and there is no remedy available. Peeples objects and argues that Rule 5(c)(3) was violated.

Whether there was a violation of Rule 5 is irrelevant. The remedy for a violation of Rule 5 is suppression of any prejudicial evidence obtained as a result of the violation. *United States v. Perez-Torribio*, 987 F. Supp. 245, 247 (S.D.N.Y. 1997). Here, the only evidence obtained between Peeples's arrest and his initial appearance were the statements he made to law enforcement. As explained above, the Government does not intend to use Peeples's statements in its case. Accordingly, there is no remedy available to Peeples and his motion is DENIED.

### b. Allegedly Unsworn Criminal Complaint

Peeples next contends that Rule 3 was violated because Judge Feldman did not sign the jurat on Agent Fleitman's affidavit, which provides the factual basis for the criminal complaint. ECF No. 51 at 10-15. Judge Feldman recommends that the Court deny Peeples motion to dismiss the complaint because Judge Feldman signed the first page of the complaint, his failure to sign the affidavit was a minor error, and the complaint satisfies the requirements of Rule 3. Peeples objects, maintaining that the affidavit is rendered useless because there is no proof Agent Fleitman swore to it before anyone.

The Court disagrees. A criminal complaint "is a written statement of the essential facts constituting the offense charged" and "must be made under oath before a magistrate judge." Fed. R. Crim. P. 3. The purpose of Rule 3, and the criminal complaint, is to ensure that a defendant's

---

[2] The remedy for a violation of Rule 5 is suppression of any evidence obtained as a result of the violation, so the Court interprets Peeples's challenge as a motion to suppress. *United States v. Perez-Torribio*, 987 F. Supp. 245, 247 (S.D.N.Y. 1997).

arrest or continued detainment is supported by probable cause. *See Gaither v. United States*, 413 F.2d 1061, 1075-76 (D.C. Cir. 1969). That purpose is not accomplished by requiring a signature on an affidavit attached to a criminal complaint; it is accomplished by ensuring that the criminal complaint was made under oath before a magistrate judge, as Rule 3 requires. *See PNC Securities Corp. v. Finanz-Und GmbH-Liedgens*, No. 95-5258, 1996 WL 665574, at *5 (6th Cir. Nov. 14, 1996) (explaining that a signature is not required on the jurat where there is other evidence that the affidavit was properly sworn); *State v. Davies*, No. 2012–A–0034, 2013 WL 501626, at *4 (Ohio Feb. 8, 2013) (same, in the context of a criminal complaint).

Here, there is other evidence that demonstrates that the affidavit was properly sworn. While Judge Feldman did not sign the affidavit attached to the first page of the criminal complaint, he did sign the first page. ECF No. 1. Moreover, the first page of the complaint explains that the complaint is based on facts continued on the attached affidavit. *Id.* Immediately below that language is the jurat, showing that the complaint was sworn to before Judge Feldman and signed in his presence. Peeples does not offer a sufficient argument to explain why that jurat should not apply to the whole complaint. Accordingly, based on the complaint itself and the applicable law, the Court adopts Judge Feldman's recommendation, and Peeples's motion to dismiss the complaint is DENIED.

    **c.**    **Arrest Warrant**

Judge Feldman recommends that the Court deny Peeples's challenge to the arrest warrant under Rule 4[3] because there was no violation of Rule 4. Peeples argues that the arrest warrant is invalid because no judge signed it.

---

[3] Peeples also alleges a violation of Rule 9. ECF No. 51 at 14. Rule 9, however, is inapplicable, because Peeples's arrest warrant was based on the criminal complaint, not an indictment or information. Accordingly, any challenge under Rule 9 is denied.

9

Peeples is incorrect. Judge Feldman's signature sits directly above the line for "Issuing officer's signature." ECF No. 4. Moreover, the Court notes that the signature on the first page of the complaint, which Peeples acknowledges belongs to Judge Feldman, is almost identical to the signature on the arrest warrant. Consequently, the requirement that the warrant be signed by a judge contained in Rule 4(b)(1)(D) is satisfied, the Court adopts Judge Feldman's recommendation, and Peeples's motion to dismiss the arrest warrant is DENIED.

## CONCLUSION

For the foregoing reasons, the Court adopts Judge Feldman's R&R, ECF No. 48, in its entirety and Defendant Joseph W. Peeples, III,'s motions to suppress, ECF No. 14, are DENIED.

IT IS SO ORDERED.

Dated: January 22, 2018
Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court