UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JOSEPH W. PEEPLES,

                           # 17-CR-06032-FPG
                 Petitioner,       # 21-CV-06607-FPG
   v.                             DECISION AND ORDER

UNITED STATES OF AMERICA,

                 Respondent.
_____

## INTRODUCTION

*Pro se* Petitioner Joseph W. Peeples has filed a motion to vacate, set aside, or correct the sentence pursuant to 28 U.S.C. § 2255 ("Section 2255"). ECF No. 155. Petitioner challenges the constitutionality of the judgment entered against him following a jury verdict convicting him of bank robbery and related offenses. Petitioner also filed a letter motion, ECF No. 174, seeking to have the Bureau of Prisons provide tracking information for his legal materials. For the reasons stated herein, Petitioner's Section 2255 motion is DENIED, and the letter motion, ECF No. 174, is DENIED.[1]

## BACKGROUND

Because Petitioner's claims in the Section 2255 motion relate only to his pretrial proceedings, the Court need not discuss the trial in detail. It suffices to note that Petitioner was charged in a three-count indictment with bank robbery, entering a bank with intent to commit a larceny, and bank larceny in violation of 18 U.S.C. §§ 2113(a) and 2113(b). ECF No. 7. At the

---

[1] In October 2022, Petitioner filed a petition for a writ of mandamus with the Second Circuit. *See* ECF No. 187. Though it remains pending, that proceeding does not preclude the Court from resolving Petitioner's motion. *See Fed. Ins. Co. v. United States*, 882 F.3d 348, 362 (2d Cir. 2018) ("A petition for a mandamus directing the district court to . . . decide a long-outstanding motion clearly would not deprive the district court of its power to do so.").

four-day jury trial held in late March of 2018, Petitioner represented himself with standby counsel present. *See* ECF Nos. 84-91 (Minute Entries). He was convicted of all charges. *See* ECF No. 88 (Jury Verdict). On July 27, 2018, the Court sentenced Petitioner to a term of 240 months' incarceration on counts one and two of the indictment, to run concurrently with a term of 120 months' imprisonment on count three. ECF No. 105. Judgment was entered on August 1, 2018. ECF No. 106.

Petitioner filed a timely notice of appeal. ECF No. 108. Appellate counsel raised the following issues before the Second Circuit: (1) the district court erred in failing to dismiss the charges following a violation of Fed. R. Crim. P. 5(c); (2) the district court violated Petitioner's right to due process by permitting the bank employees to identify him at trial for the first time; (3) the magistrate judge's failure to sign the FBI agent's affidavit in support of the criminal complaint rendered the document invalid under Fed. R. Crim. P. 3, and the district court erroneously denied the motion to dismiss on this basis; and (4) the district court erroneously refused to suppress evidence seized from Petitioner's hotel room despite testimony that the law enforcement officers entered the room before having obtained a search warrant. *See* Brief for Defendant-Appellant at 3, *United States v. Peeples*, No. 18-2309 (2d Cir. July 2, 2019), ECF No. 56.

On June 22, 2020, the Second Circuit unanimously affirmed the judgment. *United States v. Peeples*, 962 F.3d 677 (2d Cir. 2020), *cert. denied*, 141 S. Ct. 1279, *reh'g denied*, 142 S. Ct. 48 (2021); *see also* ECF No. 136 (Mandate).

On September 27, 2021, Petitioner filed this Section 2255 motion. ECF No. 155. Although somewhat difficult to decipher, it appears to raise following claims for relief: (1) Special Agent Seth Fleitman's affidavit in support of the criminal complaint was invalid because the jurat was not signed by United States Magistrate Judge Jonathan W. Feldman, thereby rendering the

2

complaint invalid under Fed. R. Crim. P. 3; (2) newly discovered evidence demonstrates that Judge Feldman and unnamed others committed fraud and perjury in connection with the criminal complaint; (3) Petitioner was denied his right to a preliminary hearing, and (4) the indictment lacked the signature of the grand jury foreperson. *See* ECF No. 155 at 4-9.

Respondent filed a response and memorandum of law in opposition to the Section 2255 motion. ECF No. 169. Petitioner in turn has filed several pleadings replying to the government's opposition memorandum of law. *See* ECF No. 173, 179, 182, 188.

During the pendency of the Section 2255 motion, Petitioner filed a letter motion, ECF No. 174, titled "Emergency Protection for Legal Work." He asks this Court to issue an order directing the Bureau of Prisons ("BOP") to produce information regarding the location and tracking number of his personal property, including 3,000 pages of legal materials. *Id.* at 1-2. He also demands his immediate release from custody, citing the lack of signatures of Judge Feldman on the criminal complaint and of the grand jury foreperson on the indictment. *Id.* at 2. The government has not responded to this letter motion.

## DISCUSSION

### I. 28 U.S.C. § 2255

Relief under Section 2255 is available "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995) (internal quotations and citation omitted). Because Petitioner is proceeding *pro se*, his submissions will be "liberally construed in his favor," *Simmons v. Abruzzo*, 49 F.3d 83, 87 (2d Cir. 1995), and will be read "to raise the strongest arguments that they suggest." *Green v. United States*, 260 F.3d 78, 83 (2d Cir. 2001) (internal quotation marks omitted). Nonetheless, a movant

seeking relief under Section 2255 must carry the burden of proving his claim by a preponderance of the evidence. *Triana v. United States*, 205 F.3d 36, 40 (2d Cir. 2000) (citation omitted). "[C]onclusory assertions . . . will not suffice" to meet this standard. *United States v. Aiello*, 814 F.2d 109, 113 (2d Cir. 1987). A reviewing court is not required to credit factual assertions that are "contradicted by the record in the underlying proceeding." *Puglisi v. United States*, 586 F.3d 209, 213 (2d Cir. 2009). "'If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion.'" *Id.* at 214 (quoting Rules Governing § 2255 Proceedings for the United States District Courts, Rule 4(b), 28 U.S.C.A. *foll.* § 2255; alteration in original).

## II. Collateral Review of the Blank Jurat Claim Is Precluded by the Law of the Case Doctrine

Petitioner reasserts his attack, presented on direct appeal, that the criminal complaint is invalid under Fed. R. Crim. P. 3 because the jurat on Special Agent Fleitman's affidavit is blank. ECF No. 155 at 5, 8. The government asserts that because this argument was addressed and rejected by the Second Circuit on direct appeal, the law of the case doctrine prevents it from being reviewed in this collateral proceeding. ECF No. 169 at 5-6.

### A. The Second Circuit Expressly Ruled on Petitioner's Claim

The Second Circuit concluded that Judge Feldman's failure to sign the jurat on the last page of the supporting affidavit submitted by Special Agent Fleitman did not render the complaint invalid. *See Peeples*, 962 F.3d at 689-91. The panel reached this conclusion based on the plain text of Fed. R. Crim. P. 3:

> [T]he text of Rule 3 merely requires that the complaint be made under oath before the magistrate judge. It may well be that the magistrate judge's signature in the affidavit in support of the criminal complaint constitutes the best evidence that Rule 3's requirement was met. It does not follow, however, that anything else falls short of satisfying Rule 3.

4

> By its own terms, Rule 3 refers to the criminal complaint itself, and not to any affidavit presented in support of the complaint. Here, both Judge Feldman and Special Agent Fleitman signed the criminal complaint, which expressly references the affidavit (or "sheet") by Special Agent Fleitman that is attached to the complaint. By signing the complaint, Judge Feldman confirmed that Special Agent Fleitman swore to the truth of the assertions made in the affidavit in Judge Feldman's own presence. Rule 3 does not require more.

*Id.* at 690 (footnotes omitted).

The Second Circuit then ruled that even "assum[ing], for the sake of argument only, that Judge Feldman erred in failing to sign [the jurat on] Special Agent Fleitman's affidavit, that error did not render the complaint invalid." *Id.* The Second Circuit reasoned that just as courts uphold warrants "despite 'technical errors,' . . . when the possibility of actual error is eliminated by other information," *id.* (ellipsis in original; quotation omitted), "any possible error or confusion [in this case] has been eliminated by Judge Feldman's signature of the complaint and his confirmation that Special Agent Fleitman swore to the truth of the assertions made in the affidavit in Judge Feldman's presence." *Id.* at 690-91. Therefore, it concluded, the district court did not err in declining to dismiss the criminal complaint. *Id.* at 691.

### B. The Law of the Case Doctrine

"The law of the case doctrine has two branches." *United States v. Quintieri*, 306 F.3d 1217, 1225 (2d Cir. 2002). The first branch, often referred to as the "mandate rule," *id.* (quotation omitted), "*requires* a trial court to follow an appellate court's previous ruling on an issue in the same case." *Id.* (emphasis supplied). "The second and more flexible branch is implicated when a court reconsiders its own ruling on an issue in the absence of an intervening ruling on the issue by a higher court." *Id.* This branch, in contrast, does not foreclose later reconsideration of the issue but holds that the prior decision "should generally be adhered to by that court in subsequent stages in the same case," *id.* (quotation omitted), "unless 'cogent' and 'compelling' reasons militate otherwise," *id.* (quotation omitted).

5

The so-called mandate rule applies because there is a prior ruling by the Second Circuit on the same issue now pressed by Petitioner in this Court. Therefore, this Court is required to follow the Circuit's ruling. *See Quintieri*, 306 F.3d at 1229; *see also Cabrera v. United States*, 972 F.2d 23, 25 (2d Cir. 1992) ("[S]ection 2255 may not be employed to relitigate questions which were raised and considered on direct appeal." (quotation and citations omitted)); *Douglas v. United States,* 13 F.3d 43, 46 (2d Cir. 1993) ("[A]ny claim raised by Douglas at this point that was also raised . . . on direct appeal of his conviction is precluded from consideration by this Court."), *superseded by statute on other grounds as recognized in Triestman v. United States*, 124 F.3d 361, 369 n.8 (2d Cir. 1997). The mandate rule bars consideration of the blank jurat claim because it is based on the same facts and legal arguments presented and decided on direct appeal.

Even assuming that the more flexible branch of the law of the case doctrine applies, which it does not, Petitioner has not shown that cogent and compelling reasons exist for revisiting the Second Circuit's decision. Petitioner claims that such reasons are "so plainly (52B) obvious[,]" ECF No. 179, since the Circuit, "weather [sic] by conspiracy or neglect never did its due diligence in regards to the evidence at hand," *id.*, namely, it "did not give any thought" to his allegations of "perjury and fraud by Magistrate Judge Feldman." *Id.*

The Court has reviewed Petitioner's appellate brief and it does not contain allegations of fraud and perjury by Judge Feldman; there are no such allegations in the record. As appellate counsel correctly explained to Petitioner when he asked her to include the allegations of "fraud and a cover-up" in his petition for *certiorari*, "[n]o new or additional evidence can be presented on direct appeal or in a petition requesting *certiorari*." ECF No. 155 at 30. Thus constrained, appellate counsel instead made the strongest argument she could make on the record on appeal—that the absence of Judge Feldman's signature on the jurat of Special Agent Fleitman's affidavit

6

rendered the criminal complaint invalid under Fed. R. Crim. P. 3 and subject to dismissal. *See* Defendant-Appellant's Brief at 48-52. The Second Circuit's published decision shows that it clearly considered appellate counsel's arguments on this point and discussed them at some length. Ultimately, however, the panel disagreed with Petitioner's position. He is not entitled to reconsideration by this Court of his appeal simply because he is unhappy with the outcome.

### III. The Claim Based on Allegedly New Evidence Is Meritless

Petitioner's claim of newly discovered evidence is based on a copy of a notarized report from Joan M. Winkleman, who states she is a board-certified handwriting expert. *See* ECF No. 155 at 14-29. According to Petitioner, the report demonstrates that Judge Feldman's signature on the jurat on the cover page of the criminal complaint, to which the Fleitman affidavit was attached, is not genuine. The government argues that the standard for granting a new trial pursuant to Fed. R. Crim. P. 33 applies to Section 2255 claims based on newly discovered evidence, and that the Winkleman report does not constitute newly discovered evidence for purposes of Rule 33. *See* ECF No. 169 at 7-8.

Some district courts in this Circuit have expressed doubt as to whether newly discovered evidence suffices as an independent ground for relief under Section 2255. *See Ida v. United States*, 207 F. Supp. 2d 171, 180 (S.D.N.Y. 2002) (footnotes omitted) (stating that although the Second Circuit "on occasion has passed on newly discovered evidence claims under Section 2255, it is not clear that any availability of Section 2255 as a vehicle for such contentions survives *Herrera v. Collins*[, 506 U.S. 390 (1993)] absent an independent constitutional violation") (citing *Herrera* 506 U.S. at 400 ("Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding.")). The Court need not resolve this issue

because Petitioner cannot meet the standard applied by the Second Circuit in Section 2255 cases where it has evaluated newly discovered evidence claims.

"'[N]ew evidence' in § 2255 proceedings, as in Fed. R. Crim. P. 33 determinations, is evidence that is discovered after the original hearing, and which could not, with due diligence of counsel, have been discovered sooner." *Giacalone v. United States*, 739 F.2d 40, 43 (2d Cir. 1984) (collecting cases). "The Second Circuit's standard for Rule 33 motions based on newly discovered evidence requires that: '(1) the evidence be newly discovered after trial; (2) facts are alleged from which the court can infer due diligence on the part of the movant to obtain the evidence; (3) the evidence is material; (4) the evidence is not merely cumulative or impeaching; and (5) the evidence would likely result in an acquittal.'" *United States v. Choudhry*, 330 F. Supp. 3d 815, 834 (E.D.N.Y. 2018) (quoting *United States v. Owen*, 500 F.3d 83, 88 (2d Cir. 2007)).

"Because motions for a new trial are disfavored in this Circuit the standard for granting such a motion is strict; that is, newly discovered evidence must be of a sort that could, if believed, change the verdict." *United States v. Gambino*, 59 F.3d 353, 364 (2d Cir. 1995) "To justify the extraordinary relief authorized by Rule 33, the evidence must not simply be 'newly discovered' by defendant; rather, the defendant must demonstrate that such evidence was effectively undiscoverable at the time of trial." *United States v. Carpenter*, 520 F. Supp. 3d 290, 293 (E.D.N.Y. 2021) (citing *United States v. Siddiqi*, 959 F.2d 1167, 1173 (2d Cir. 1992)). In other words, "[t]here is a difference between evidence that is newly discovered and evidence that was previously known but has become newly available." *United States v. Malpeso*, 17 F. App'x 23, 25–26 (2d Cir. 2001) (summary order).

The Winkleman report does not meet the required criteria. First of all, Petitioner has failed to demonstrate that the evidence could not have been obtained, through the exercise of due

diligence, earlier in this proceeding. The Winkleman report was based upon the criminal complaint, a document clearly available to Petitioner before and during the trial. Indeed, as discussed above, Petitioner already litigated the validity of the criminal complaint before this Court. Petitioner offers no reason why he could not have sought out the services of an expert witness, such as Winkleman, at an earlier point in time. It is well settled that "[e]xpert reports such as the type presented to the Court here, based upon evidence available to the defense at trial, do not constitute new evidence." *Pri-Har v. United States*, 83 F. Supp. 2d 393, 401 (S.D.N.Y. 2000) (citing *Massaro v. United States*, No. 97 Civ. 2971, 1998 WL 241625, at *2 (S.D.N.Y. 1998) (holding that tests conducted by expert witness post-conviction, based upon evidence available to the defense at trial, did not constitute new evidence within the meaning of Fed. R. Crim. P. 33)).

Additionally, the report is not favorable to Petitioner. To the contrary, the report is wholly inconclusive as to the two questions Petitioner asked Winkleman to examine. Winkleman indicates that Petitioner asked her "to determine, if possible, which came first—the stamp/imprint in upper right of document [she] have captioned as Q-1 or the Case No." ECF No. 155 at 16. "Q-1" was the criminal complaint in Petitioner's case; it was a "copy of unknown generation from scanned document." *Id.* For comparison, Petitioner offered a copy of a criminal complaint from a different matter which also bore the signatures of Special Agent Fleitman and Judge Feldman. *Id.* Again, the copy provided to Winkleman was a "copy of unknown generation from scanned document." *Id.*

Winkleman's opinion, "rendered upon reasonable professional certainty, [was] that **no determination could be reached** regarding the signatures . . . and [the] assignment to determine, if possible, if the signatures were placed on the document before or after printed horizontal signature lines." *Id.* (bold in original); *see also id.* at 18 ("It is my opinion that no determination

9

could be reached regarding the Case No. and assignment to determine, if possible, whether the date stamp/imprint was placed on the document before or after the handwritten portion of the Case No."); *id.* at 24 ("[N]o opinion regarding authenticity can be reached at this time."); *id.* at 26 ("My opinion, in this assessment, is no determination can be reached regarding the signatures v[ersus] printed horizontal signature lines."). Petitioner makes much of the fact that Winkleman picked out some alleged inconsistencies between the two signatures of Judge Feldman she examined. However, Winkleman expressly noted that despite identifying some "differences" in the signatures she could offer "no opinion regarding authenticity" at that time. ECF No. 155 at 24.

Petitioner asserts that Winkleman "determined," *id.* at 24, that the signature was "likely not genuine" because she found some "patching." This misrepresents Winkleman's report. In explaining what she meant by the term "patching," i.e., raising the pen off the paper and lowering it back on the writing line, she noted that when patching is "carelessly done" it "may be genuine." *Id.* On the other hand, "[b]y its nature <u>repeated</u> careful patching is not likely genuine." *Id.* (underlining in original). However, Winkleman did not find "repeated careful patching." As noted, she made no conclusion about the authenticity of the signature. Moreover, Petitioner has not explained, and the Court has been unable to find, that there is any relevance to his question about whether the horizontal lines were printed before the signature or vice versa. The Court is persuaded that there is not even a remote possibility that anything in the Winkleman report would have changed the outcome of any of the pre-trial proceedings or the trial, and therefore it does not meet the materiality element. In short, the Winkleman report, though perhaps newly available, is not newly discovered evidence as contemplated by Fed. R. Crim. P. 33 and does not come close to justifying the reversal of Petitioner's conviction. Therefore, this claim does not provide a basis for relief under Section 2255.

10

### IV. The Claims Regarding the Indictment and the Denial of a Preliminary Hearing Are Procedurally Barred

The government argues that, because he failed to raise them on direct appeal, Petitioner is precluded from collaterally raising the following two claims: he was denied the right to a preliminary hearing, and the indictment was defective because it lacked the signature of the grand jury foreperson. *See* ECF No. 169 at 9-10. Petitioner has not responded to the government's procedural default argument in any of his replies.

Because "a § 2255 motion is not a substitute for direct appeal, a court will not afford collateral review to claims that a petitioner failed properly to raise on direct review unless the petitioner shows (1) good cause to excuse the default and ensuing prejudice, or (2) actual innocence." *Harrington v. United States*, 689 F.3d 124, 129 (2d Cir. 2012) (internal citation and brackets omitted). "Cause" in this context "must be something external to the petitioner, something that cannot fairly be attributed to him[.]" *Coleman v. Thompson*, 501 U.S. 722, 753 (1991). "Prejudice" requires "showing, not merely that the errors at [the petitioner's] trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982). As the cause and prejudice test is phrased in the conjunctive, the petitioner's failure to establish either element is fatal to his ability to excuse the default. *See Murray v. Carrier*, 477 U.S. 478, 496 (1986) (upholding "adherence to the cause and prejudice test 'in the conjunctive'") (quoting *Engle v. Isaac,* 456 U.S. 107, 134 (1982)); *see also Stepney v. Lopes*, 760 F.2d 40, 45 (2d Cir. 1985) (noting that because a petitioner who has procedurally defaulted must show both cause and prejudice in order to obtain federal habeas review, it was unnecessary to reach question of

11

whether or not the petitioner showed prejudice in light of the conclusion that there was no showing of cause). Petitioner's replies contain no mention of the government's procedural default defense and do not attempt to demonstrate cause and prejudice.

An alternative to the cause-and-prejudice test for overcoming a procedural default is to show actual innocence. To so, the petitioner "must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Rosario v. United States*, 164 F.3d 729, 733 (2d Cir. 1998) (quoting *Bousley*, 523 U.S. at 623 (internal quotation marks omitted in original)). In this context, actual innocence "means factual innocence, not mere legal insufficiency." *Id.* (citing *Bousley*, 523 U.S at 623). Again, Petitioner has not attempted to demonstrate that he is factually innocent of the bank robbery with which he was charged. Notably, appellate counsel did not challenge the legal sufficiency of the government's evidence, which the Second Circuit described as "overwhelming." *Peeples*, 962 F.3d at 692.

Because Petitioner has not established cause for failing to raise the indictment and preliminary hearing claims on direct appeal and prejudice attributable thereto, or that he is factually innocent of the crimes of which he was convicted, he cannot excuse the procedural default. The Court dismisses the indictment and preliminary hearing claims as procedurally defaulted and does not reach their merits.

### V.     The Letter Motion

Petitioner indicates that he was he was "directly threatened by Beaumont staff" about some of his personal property—3,000 pages of legal documents and three large manila envelopes containing 100 pages each. ECF No. 174 at 1. He states he has already notified the Eastern District of Texas about the unspecified threats. *Id.* He demands that this Court order the BOP to produce

information such as the location and tracking numbers of all his personal property. *Id.* Finally, he reargues his habeas claims and demands immediate release from custody. *Id.* at 2.

The allegations concerning his demand that the BOP provide tracking numbers for his personal property are not cognizable in a Section 2255 motion because release from incarceration is not an appropriate remedy for this alleged violation of law. *See United States v. Leventhal*, No. 13-CR-0695 (BMC), 2019 WL 1747000, at *2 (E.D.N.Y. Apr. 18, 2019) (petitioner's claim that his confinement has severed his relationship with his daughter and that the BOP deprived him of medical care for a preexisting condition he had at the time of sentencing were not are cognizable in a § 2255 motion "because release from prison is not an appropriate remedy for either of these alleged constitutional violations"); *Jiminian v. Nash*, 245 F.3d 144, 146-47 (2d Cir. 2001) ("A motion pursuant to § 2241 generally challenges the execution of a federal prisoner's sentence, including such matters as . . . prison conditions. In contrast, § 2255 is generally the proper vehicle for a federal prisoner's challenge to his conviction and sentence."). Although Petitioner mentions release from custody in the letter motion, that is not the remedy he seeks for BOP's failure to provide tracking numbers—the remedy he seeks is for this Court to compel the BOP to do so.

To the extent the letter motion seeks relief based on the allegations regarding the BOP's purported failure to provide tracking information about his personal property, it is denied because such a claim is not cognizable in this Section 2255 proceeding. Since Petitioner potentially could refile a conditions of confinement claim in a 28 U.S.C. § 2241 proceeding in the district where he is currently confined, *see Leventhal*, 2019 WL 1747000, at *3, the denial is without prejudice. To the extent that the letter motion seeks release based on the alleged constitutional violations that occurred during his trial, it is denied with prejudice as meritless for the reasons discussed above in this Decision and Order.

## CONCLUSION

For the foregoing reasons, the Section 2255 Motion, ECF No. 155, is DENIED with prejudice. The Letter Motion, ECF No. 174, is DENIED with prejudice in part and without prejudice in part, as discussed above. Because Petitioner has failed to make a substantial showing of the denial of a constitutional right, 28 U.S.C. § 2253(c)(2), a certificate of appealability is DENIED. The Clerk of Court is directed to close Case # 21-CV-6607-FPG and forward a copy of this order to the Second Circuit in relation to Petitioner's mandamus proceedings (COA Docket # 22-2469).

IT IS SO ORDERED.

Dated: January 17, 2023
       Rochester, New York

_____
HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York